We'll proceed with our next and final case of the day. That case is number 24, 2439, Berth v. Ray. Counsel, when you're ready, you may approach, introduce yourself, and let us know how much time you'd like to reserve for rebuttal. Thank you, Your Honor. My name is Jason Jabi, and I would like to reserve three minutes for rebuttal. Your Honors, may it please the Court, I am here on behalf of my client, Samuel Berth. Mr. Berth, in November of 2020, was at a park with several of his family friends and a couple of extended friends. There were New Jersey State Troopers that came into the park and began what I would suggest was a criminal investigation. The investigation started because of trash that was seen in a car. There was a question about whether or not that trash may have been in a box for an illegal vape pen. Ultimately, there was no contraband found. There was no drugs located. And for the purposes of this appeal, I am conceding that there was probable cause to believe that Mr. Berth was under the influence. I thought that was conceded. I mean, that's what I'm saying, Judge. Yes, I'm conceding that. We're not challenging that portion. What we are challenging is the utter lack of any articulable facts and circumstances to suggest that he operated a vehicle while he was...  So, I went back and I looked at the video. I could not find them giving the keys back. I believe that the keys were given to the police because he did consent to a search of his car. So, I think that that's what happened. I will defer to my colleague on the other side of the V with respect to that. Because if he didn't have the keys, does the government have a case at all? I think for that and so many other reasons, no. The case law in New Jersey that deals with driving while intoxicated interprets operation in a broad sense. It may be broader than some of what somebody in a normal parlance might think of operation. But common among all of those cases is somebody being in the car, utilizing keys, having a car running, but being outside of a car. Even if you were intoxicated and even if at one point in time you may have plans to drive the car, it doesn't get the state there. Yeah, they seem to be, all the ones cited, seem to be almost like a quasi attempt in that all of those could be read as each person taking a substantial step towards operation. That being entering, turning the key, passing out afterwards, or maybe driving and then passing out. The one exception seems to be the motorcycle case where there was no engagement of the motor. He sort of was using it as a bicycle and just used gravity to propel it. That seems closer of a call. Can you address that case and the fact that the motor wasn't engaged but it was still considered operation? Sure. And I don't think that the motor is a per se requirement. I think, though, that when you're on top of a motorcycle, the motorcycle's moving, you're under control of that motorcycle, the risks that arise from driving while intoxicated are present. It would be no different than a bicycle. I know in certain states when you're on a bicycle, there's been criminalization of that or at least making that unlawful. And it makes sense because, again, you're in a position to actually cause the harm. But where I think that the state went a little too far in this case, and this was in my briefing. I didn't put this in briefing here, but I had drawn an analogy to a movie a couple of years ago, the Minority Report, where they were criminalizing people's thoughts. And that's something that we don't do. And, in fact, even when we talk about criminal intent, that the whole substantial step is there to make sure that just because somebody may have bad thoughts doesn't mean they're being arrested and prosecuted for that. What about the focus letters question that sort of directs you to the any crime exception? Was there probable cause for trespassing or some other crime here? So I actually do think that on the record, although it was never developed nor was it maintained, so it really wasn't something that we went into during discovery. But I would submit and I would suggest that probable cause did exist for like a defiant trespass. I think that you have a sign. You have them, at least according to the troopers, walking past that sign into the woods. Now, the way that I've looked at the cases, because I understand that what Devin Pack says, and Devin Pack is a pretty strong precedent in favor of my opponent. But this court, and the one case that I can cite to you right now is I think it's Harrod v. Cessnaus. And I'm not sure that I'm saying that right. So I'm going to give you the site. I have it as 973 F3rd 190. The cases seem to make a distinction between when your claim is based on a prosecution versus merely just an arrest. And that you can still have a Fourth Amendment violation when there's a prosecution involved for a crime that there was not probable cause to believe was committed. And that might be different than just saying, well, look, somebody was arrested. They could have been arrested for something else. And, again, that comes right from Third Circuit case law. And I actually found that in other circuit case laws. I found some Second Circuit law where, again, if you're talking about a violation coming from a prosecution. So that's your count two? Well, no, Judge. So count two is straightforward. Count two only talks about false imprisonment. But if you look in count one, under the Fourth Amendment, we raise everything, including the fact that he was prosecuted. And it's either 30 and 31 or 31 and 32 where we specifically allege that notwithstanding all that was going on, Trooper Ray processed a prosecution against him. She filed the complaint. And that complaint led to court action until the state ultimately withdrew the charges later on. And so part of the harm certainly we would think would be the actual arrest, the indignity of what happened there. But he was prosecuted. We allege that. And that comes under the entire rubric of a 1983 claim alleging a violation of the Fourth Amendment. Now, what about, you know, every now and then there's this recognized exception for reasonable mistakes of law. And so, you know, we could sit there and say, okay, whatever the outer bounds of intent are, and this isn't, you know, your movie reference, minority report. But, you know, maybe an officer just made a mistake under the circumstances, confused intent with attempt, something like that. Isn't that enough, though, to kind of begin to take us outside of what you can recover for under 1983 since reasonable mistakes are, you know, not actionable? So the Hine case, which was pointed out in the order that was issued, I've always had a problem with that case. Not because I think it was necessarily wrongfully decided, but I don't think it's clear from that case how to determine what a reasonable mistake of law is. In the Hine case, you had a very abstract statute that arguably, and it's not clear from the facts, but it seemed like no court had ever interpreted it in North Carolina. It seems like there was, you know, a plain language argument made to the intermediate appellate court. They issued a holding, and it also seems that the statute's language might not have been extremely clear. There was references to the fact that, like, another provision said something a little bit different. So my answer to your question about reasonable mistake of law would be that in this case it would not be a reasonable mistake of law. And for a couple of different reasons. We're not talking about an abstract regulatory statute that could be interpreted different ways. We're talking about DWI, which I think is pointed out in the briefing as well as in the district court's opinion. That's a priority of the legislature in New Jersey. It's a statute that this trooper was well acquainted with. And one of the points that I make, and I think it goes right to this, the trooper was one of these drug recognition experts. So she had specialized training that pertains directly to the enforcement of this statute. She's wrong. She's wrong in this case. I mean, you know, I mean, it turns out that she's wrong.  And so, you know, I mean, that's at one level good for you because she had the training. But at another level, we've got this weird thing where we've got the New Jersey Supreme Court in this Tishio case, basically saying a defendant's intent to operate a motor vehicle can constitute operation within the meaning of the statute. And so that's probably wrong at one level. That might just be overbroad dicta. But if we have an officer with some training in this area and we've got the New Jersey Supreme Court saying that this is one way of reading the statute and she has a case for intent, I mean, if that is a mistake, and it probably is, isn't that a reasonable one? So I think that just taking that language out of Tishio, you have to read it with the facts of that case, because the facts of that case did not involve just... No, I mean, no, I agree with you. Right. Like, I think that's right. I think it's dicta. But if an officer were to read that out of context without a formal legal education, without anything else like this, and say, I just read this from the New Jersey Supreme Court. I don't think we would go around saying that's correct, but I think we might say that's a reasonable mistake. And if Hyens says reasonable mistakes cut it, then that would cut it. So my response to that goes back to what I... And I see that I'm up. Can I just finish? Yeah, yeah, yeah, finish. So the response to that goes back to what I was talking about in terms of this very well-established principle that exists in federal and in state courts, that there is no such thing as a guilty mind leading to a criminal offense. And I think there's even... And I wrote it down. I think at one point in time on the body cam, the trooper even seems to suggest the shakiness of the ground that she's on. 4636 of Exhibit J, you hear her clearly saying to the other troopers, I'll get destroyed at this stop. I understand that subjective... We're not supposed to go with subjective, but I think that's an answer that this was not a reasonable mistake of law. So if I'm tracing back what you're saying, what you're saying is we've got the New Jersey Supreme Court made with a little bit of loose language on the breadth of intent. And you're saying that a well-trained officer would reasonably know that the New Jersey Supreme Court was not creating an intent-only offense right there. It was not doing that. And so despite that language being a little broad, a reasonable officer would say, look, we just don't punish for intent alone. Was there any, though, you know, was there any substantial step, though, that could go with the officer? I mean, when I looked at the video, I thought that kind of favored you. I thought that as soon as your client suggested that, you know, he was thinking about driving other people home, she placed him under arrest really fast. And so I don't know that there was time for too much of a substantial step. I think you conceded in discovery that he had the keys, though. But I don't know that he did too much else other than tell her he was thinking about it. Am I misreading that video? No, you're not. And also, I don't know how much weight this carries. I don't want to parse words. But I did go back and look as a result of the court's order. And the tense that was used was past tense. She, you know, was asked, I'm sorry, I have it here. I think I know what you're talking about. She said, what were you going to do? And he says, I was planning on driving her home. It's not what I'm about to do.  And so I think that that's really the answer, along with all the other things that I said, you know, the least of which is not that this is a trooper who is an expert, right? Like she's an expert, held out as an expert in DWI law in New Jersey. I don't want to take more time than I'm allotted. We'll hear you on rebuttal. Yes, sir. Good afternoon, Your Honors. Brett J. Harrelson, Deputy Attorney General from the New Jersey Division of Law for the appellee, Michelle Ray. And may it please the court. Probable cause is not obviated by a reasonable misunderstanding of law or fact. And probable cause to arrest for any offense is sufficient to justify an arrest under the Fourth Amendment. Bearing these two legal principles in mind, this court should affirm for at least two reasons. First, Trooper Ray had probable cause to arrest Mr. Berth for violating New Jersey's DUI statute. And second, even if the court disagrees, she also had probable cause to arrest him for defiant trespass. Do we know whether Mr. Berth had the keys or not? I did review the video, Your Honor, and it appears the keys were taken. And I cannot find a moment in time where they were given back to him. It is a little unclear because it's a body-worn camera, so it's hard to see. Under New Jersey law, if he didn't even have the keys to the car, is there any way that he can be said to be operating the car? So I would argue yes, respectfully. Under New Jersey's very, very broad, expansive definition of the term operate, as discussed in New Jersey Supreme Court and Appellate Division precedent, the purpose of the statute is to deter and ideally eliminate driving under the influence. So that term operate has been interpreted very expansively to prevent people from driving under the influence. And this case is a perfect example where you have someone who, mind you, Trooper Ray is on patrol. She finds two illegally parked cars in a closed public park after hours in the dark of night. And three youths of varying age between 14 years old and 26 emerge from a wooded area upon which they're trespassing. One appears to be under the influence of something. Another is falling down unconscious, urinating himself. And she observed evidence of CDS in one of the vehicles, which we later find out was Mr. Berth's. So this is the factual scenario that she confronted in that moment. And after failing a field sobriety test on all three tests. We're familiar with the facts. I think the point is, under New Jersey law, as we were discussing earlier when I was discussing with your colleague, the cases that don't have actual operation could be read as a quasi attempt in that all of them have a substantial step, not purely intent. I think to Judge Roth's point, it seems like there's no substantial step here. Nor is there even, it's questionable whether there's intent. Because so far, the only statement that's been identified and that is observable in the video is one of a past intent to drive the children. Following a statement of the officer herself who told him the kids are going to be driven to the station. Their parents will pick them up. So he already knows he's not driving them at the point he makes that statement. So, I mean, I think there are a number of questions. I just put there one, which is, is there even any evidence of a sort of quasi-substantial step here? And even if not, and intent alone is enough, where is the evidence of intent? So I would argue that the focus of the inquiry, the operation inquiry, is the intent. And that Your Honor is right. In these prior cases, we have an act of some kind of substantial step. And I would argue that those speak to intent. If you get behind the wheel of a car and start to put the key in the ignition, you are evincing your intent to drive that vehicle. You're not necessarily admitting to it. Right, because the substantial step has to be both a substantial step that also reflects an intent to commit the crime. I mean, it has to be both. Well, in this case, I would argue that there is such a substantial step. What is it? And admittedly, this is sort of the outer periphery of what I would consider operation. But you have an intoxicated person for purposes of this appeal. Sure. He fails the field sobriety test, and he states his intention to drive home. But he doesn't even have the keys. Correct. But at that time, Your Honor— A substantial step is a statement of past intent? It was the entire situation. And I would say that probable cause, we are looking at the totality of the circumstances. And you have an individual who was originally arrested for CDS, and he was told that he would be released for that. So he thinks he's getting his keys back. He thinks he's going to be driving to the police station to accompany his friends and then leaving. Is there any cases—I know there are cases where he's not in the car and says he's going to drive. Not New Jersey cases, in other states. But is there any case anywhere where he doesn't even have the keys to the car and he says, I'm going to drive, where he is held for operating under the influence? Not that I know of, Your Honor. But to Judge Phipps' point earlier, even if—let's assume that he wasn't operating the vehicle under New Jersey law. Trooper Wray mistakenly, perhaps, but reasonably misunderstood the law under the New Jersey Supreme Court's expansive interpretation of the term operate. That could construe a misunderstanding of the intent-focused inquiry of the operation. That's not a bad argument, but you've never argued—I mean, we raised it in our focus letter. But isn't that sort of forfeited? You've never raised it before the district court or here. It was raised by the panel. I acknowledge that, Your Honor, and that is perhaps somewhat unfortunate. What we did argue, though, in the district court was qualified immunity, which we didn't argue on this— which is a similar analysis. But we didn't argue it here because the district court never reached that issue. So I feel a little bit constrained in how to argue this. And at a minimum, I would say that the district court should at least have an opportunity to address that argument if the court is inclined to send it back. But I still don't think it's necessary because this court can affirm for any reason in the record any matter of law, not just those that are raised. And because it was raised by the court in the order, which I have, my adversary had an opportunity to review the Hine case and the Devenpeck case and be prepared to discuss it here. So I understand it's not ideal, but I think the court can and should affirm on any basis available because this is not an example of horrible policing. Yes, Trooper Ray ended up being wrong, but having viewed the video, I would say that Trooper Ray's conduct in this was fairly exemplary. She was very respectful. At no point was she rude, yelling, cursing. She was extremely courteous and respectful. If you're respectful and get the law completely wrong to such a degree that it's beyond anything that's ever been decided by any court anywhere, isn't that a little bit too far? Well, it gives color to the situation that she wasn't rude or disagreeable. She could have been rude and still not violated the situation if, for instance, Mr. Brick actually had the keys and was sitting in the car turning on the ignition. But now that we've seen the video, he didn't even have the keys. So if the trooper has the keys, how can she make the determination that even if he says, I'm going to drive the car, that any way possibly he could drive the car? But this is why, Your Honor, it's an intent-based crime. That's why this is the court inquiry because the only alternative she had would be to give him the keys back, this person who just failed the field sobriety test, and wait until he puts it in the ignition. She could have told him to get a rod. She could have done a lot of things. But unfortunately, the law doesn't require these officers to be perfect. She was really quick to put him under arrest after he said past tense, I was going to drive him home. And so it seems that she could have just said, okay. And then if she saw him walk back to his car, get in, sit down, turn the ignition, say, hey, hey, hey, what are you doing? You just failed the field sobriety test. At that point in time, we've got a substantial step. We've got a lot of other stuff. She doesn't have to let him loose on the roads in order to stop him. She's got a little bit of time to do this. Now, they say in Fourth Amendment cases you don't want the second guessing in a courtroom of what officers have to go through on the scene. But even so, this could be viewed as a little quick to have someone say, I was going to drive him home, and then say, you're under arrest. That strikes me as even with the benefit of hiring, you've got a little bit of a problem here because that might be just too quick. I understand that, Your Honor, and I do appreciate the concern. But we also don't know. He might have had a spare key in his glove box, a valet key, where they can't just leave him with the vehicle. And she is trying to look out for the safety of him and other motorists and pedestrians. But why not let him walk? Why not just see what he does? There's multiple officers there. If you're an officer, you might have a good hunch that something illegal is going to happen. But you kind of got to wait sometimes for something a little bit along the lines of something illegal to happen before you've got a crime. Would you mind if I pivoted to the Devin Peck point? Of course. Because, you know, even if you lose on kind of the DUI and that's not reasonable and these aren't reasonable mistakes, you've still got this understanding that you can arrest for kind of any crime if you have a probable cause for any crime. Your friend on the other side says, no, no, no, Devin Peck might apply to arrest, but his case goes more to the actual initiation of prosecution and everything else like that. And so at least if I've read into his argument correctly, he's saying this is not an instance for Devin Peck's application. What do you say to that? This is the first time that I've heard the malicious prosecution argument raised. And I know the district court was somewhat confused by the allegations in the complaint and what exactly was being alleged. And so this is the first I'm being confronted with this issue of malicious prosecution. That's what I'm asking because, you know, it's an oral argument. People can say new things, but I'd love to hear your thoughts on that. I can speak to Devin Peck's applicability in the context of the false arrest, and it stands for what it stands for. And because Berth was committing defiant trespass, there was probable cause to arrest him for that. Yeah, again, I mean, I could make a qualified immunity argument as to malicious prosecution or argue that, yeah, I mean, I guess I think that would probably be. I mean, so it seems like if you were to lose on Devin Peck grounds here, you could still say, hey, we got a million qualified immunity issues later down district court. We'll just run those to the first. We'll run those to ground for the first time there. Is that what you're saying? I think it would. I mean, I really, it's hard to say. I just did not realize that the malicious prosecution claim was a focal point of this appeal. It wasn't raised by the district court or anywhere until just now. So I feel a little bit blindsided by that argument. So I think, yeah. Your colleague stated that there was evidence in the record that there was a sign that Mr. Berth and his friends had to walk by. I don't recall seeing, I recall him saying there was no sign that he saw. And I recall the trooper saying that she had paperwork at the office as to whose land that was and that it was, in fact, trespass. I don't remember her testimony about the sign. Can you speak to whether or not there was a sign and he had noticed that he was on private land and that is there, in fact, probable cause for a defiant trespass? Because that's an element, and I didn't see it in the record, and I looked. But your colleague seems to think there is, and certainly you would know the record better than me. So Trooper Ray testified that it was private property at her deposition and that she maintained a list that had the owner's contact information and things of that nature. Apparently, I'm told that people go back there. There's a quarry with some sort of body of water where people will sometimes go swimming, and there have been drownings and other injuries. So it's sort of on their radar. I'm told there were signs there. You can hear that in the body cam footage and the conversations the troopers are having. But that being said, there's no photographic evidence or anything of that nature. Sure, but I didn't even see her testimony in her deposition about that. You're saying there's evidence in the record, like in overheard statements in the body cam? Your Honor, I see that my time is up. May I answer Your Honor's question? That would be great. I did not see anything in her transcript about there being signs just about this being private property and that they were on high alert, that people should not be back there, they'd get complaints. And isn't notice, though, part of a defiant trespass? You have to have notice that, in fact, you're not supposed to be on that property? It is, and unfortunately that was not one of the facts at summary judgment. So it's something that the troopers mentioned on the body-worn camera footage, but we never really explored that. So all I can say is the only thing in the record is that this was represented by the troopers. That's a good point. Is this also forfeited to any crime exception? I wouldn't say it's forfeited. Raise it? It was not raised. It was not raised. But again, I would urge the court to affirm based on evidence. So we can affirm based on any grounds in the record, but I think what Judge Chung was saying is we don't have grounds in the record because we don't have something in the record that indicates that Samuel Berth had notice that this was private property. The officers might have known, and we hear that on the video camera. They knew it was private property, but he had to know, and we don't know that he knew. Well, they tell him there are signs there which would constitute notice. But they told – I think the notice had to happen when he went there, not when he came off and they were talking to him. Right, but that doesn't negate the probable cause the officers would have had to arrest him for that because they would be entitled not to believe his statement that I didn't see the sign, I didn't know, because everyone's going to say that realistically. Sure, sure. That's true. But I guess you're asking us to rely on overheard statements for the proposition that there was a sign that he would have seen, but the overheard statements don't indicate if these signs were in his path. I mean, I'm just trying to look for something that would actually show there was, in fact, a sign that Mr. Berth would have passed or had an opportunity to view. And you're getting closer to it. I'm just not sure that it does. So I guess I'm – I mean, not to put too fine a point on what she's getting at, but at summary judgment, all reasonable inferences are resolved in favor of the non-movement. Now, this – and that's Berth. What you're saying might be a reasonable inference, but it doesn't get resolved in your favor at summary judgment. So I think it's a reasonable inference, but the standard that we have from the Supreme Court says the non-movement gets all the inferences at this stage in their favor. And so I guess – I hope I'm not taking too much – but I guess what my thought is is I don't think that we're going to be able to go the inferential route to support this proposition, and so we're looking more for actual evidence at this point in time in the record. Did I do that wrong by you? Better than I did. No, no. But – so the question is, just really directly, all you've got is inferences, right, for the notice point? That's correct. Yeah. We have the statements of the troopers. Yeah. And then with the inferences, it could be drawn from those at this stage. Yeah. Right. So for all these reasons and those in our briefs and raised by the district court below, I respectfully ask the court to affirm. Thank you. Thank you very much. Was it two or three minutes that you saved? I think I said three minutes, but I don't think I'm going to need that much time. I think it was three. Yeah. The sign says three. We've got three, Michael? Yeah. I wanted to go directly to the Devon Peck issue, and one of the procedural tools that's available to defendants is if they think that our pleadings are not specific enough, if they think, if they're confused about what we're saying, there are mechanisms that defendants can use to ask for more definite statements. They can file a 12B6 motion saying that we didn't make out a claim. And so the point that I was making was that part and parcel of our claim under 1983 and the Fourth Amendment goes to the issue of the prosecution. And so I respectfully disagree with the statement that this is the first time ever that we've raised that issue. I understand that it was not necessarily placed at issue under a Devon Peck argument, meaning that there was a filing where the other side said, well, under Devon Peck there was still probable cause, and then I would have responded, no, no, no. The Third Circuit case law makes clear that with regard to a prosecution, as opposed to just an arrest, the issue of probable cause for anything. Well, your paragraph 31 and 32 talk about initiating a prosecution, but it doesn't state that there was process cut. Process cut? Yeah. So the case you rely on, I believe, is Harvard versus Cisnallis earlier, which differentiates between false prosecution and malicious prosecution. Malicious prosecution being there was an arrest warrant where an affidavit for probable cause was formed. This is an on-scene arrest that is absent that sort of warrant. And at the point you seem to be saying prosecution was initiated, it again does not seem to be pursuant to process. So it would seem that you're alleging a false prosecution, not a malicious prosecution, which the ending crime exception does apply to. So I think my response to that is that, I mean, he was taken back. I understand there wasn't an arrest warrant, but there was a complaint sworn out pursuant to New Jersey law. And at that point in time, when we're talking about the prosecution, the violation is being prosecuted for what he's being prosecuted for. So I don't think that the ending crime exception helps when you get to the actual point of the prosecution. And then the only other thing that I wanted to—well, that's all. Thank you. Thank you very much. We'll take the matter under advisement. I think we're adjourned for today.